```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DANIEL CONNELLY,
                                                                    NOT FOR PUBLICATION
                              Petitioner,                           MEMORANDUM & ORDER
                                                                    07-cv-4616 (CBA)
        -against-

DANIEL SENKOSWKI, Superintendent
Clinton Correctional Facility,

                              Respondent.
-----------------------------------------------------------X
```
**AMON, Chief United States District Judge**.

## INTRODUCTION

Petitioner Daniel Connelly ("Connelly"), through counsel, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on November 5, 2007. He seeks to vacate his conviction for two counts of murder in the second degree, N.Y. Penal Law § 125.25(2), entered in New York state court on April 4, 1995. Connelly advances three grounds for relief: (1) that the evidence was insufficient to support his conviction for depraved indifference murder; (2) that he was denied the opportunity to present a defense when the trial court denied a defense request for an adjournment to obtain a psychiatric examination or, in the alternative, that his counsel was ineffective for failing to timely investigate a possible psychiatric defense; and (3) that the trial court improperly declined to give the jury a "no duty to retreat" instruction. For the reasons contained herein, the petition is denied.

## BACKGROUND

On August 4, 1994, Connelly killed Frank Gabucci and Angelo Russo with a knife in his home. The three, along with a few other friends, had spent the evening and the early morning

1

hours drinking and using cocaine before Connelly invited everyone back to his home at around 6:00 A.M. Connelly, Gabucci, and Russo appeared to be on good terms to this point. According to Connelly, however, Gabucci and Russo began to badger him for money to buy more cocaine. Eventually, he demanded that they leave his home. When they did not, Connelly grabbed a knife, went up the stairs to where Gabucci, Russo, and two others were seated, and stabbed both victims numerous times.

At trial, the medical examiner testified that Gabucci had two stab wounds to the chest, one to the back, and one to the shoulder. The wounds to the chest and back alone could each have been fatal. After being stabbed, Gabucci jumped out of the second-story window. Connelly then stabbed Russo once in the chest and once in the back, both of which could have been fatal. Connelly fled the scene, but he was apprehended the following day at the home of Thomas Donovan, a longtime friend and an eyewitness to the murders.

Connelly was charged with four counts each of murder in the second degree, including two counts of intentional murder under New York Penal Law § 125.25(1) and two counts of depraved indifference murder under § 125.25(2), as well as one count of criminal possession of a weapon in the fourth degree. On the morning of the trial, Connelly's counsel filed written notice of the intent to introduce psychiatric evidence and sought an adjournment to have Connelly examined. Judge Marrus found this request to be little more than a "dilatory tactic." Noting that the trial would be substantially delayed and that the prosecution would be prejudiced by admitting psychiatric evidence, he denied the request for adjournment.

When the prosecution rested its case, Connelly moved to dismiss all charges for insufficiency of the evidence. Judge Marrus denied the motion, finding that the prosecution's evidence was sufficient as to all charges. Connelly's testimony concluded the defense case. He testified that he

believed Russo and Gabucci were going to burglarize his home. He claimed that he had stabbed both in self-defense, and that his only goal was to "get them out of my house." According to Connelly, he had "no intention of killing them." Trial Tr. at 815. He did not follow Gabucci or Russo after stabbing them. *Id.* at 815-16. And hours after the incident he had a neighbor named Marie Schnell call his house "to see if everybody was alright." *Id.* at 815. "I know I hurt them, but I didn't think they were dead," he testified. *Id.*

At the charge conference following the defense's case, Judge Marrus dismissed the criminal possession of a weapon charge and decided to submit only the depraved indifference murder charges to the jury. Trial Tr. at 854-55. He found the evidence inconsistent with intentional murder. After Judge Marrus's jury charge, defense counsel requested an instruction that an individual has no duty to retreat from an aggressor in his own home. Judge Marrus declined to give such an instruction. The jury returned convictions on both counts, and Connelly was sentenced to consecutive terms of twenty years to life imprisonment.

On February 18, 2003, Connelly brought a motion to set aside his conviction pursuant to New York Criminal Procedure Law § 440.10. Connelly alleged ineffective assistance of counsel for, *inter alia*, failure to provide notice for and present psychiatric evidence in support of a defense of extreme emotional disturbance. Connelly claimed that this failure was prejudicial because an extreme emotional disturbance defense would have supported submitting manslaughter in the first degree as a lesser-included charge to the jury. Connelly did not advance any argument that presentation of psychiatric evidence would also have supported his defense of justification, nor did he make any claim of error by the trial court itself. Judge Marrus denied the motion, *People v. Connelly*, No. 9473/94 (N.Y. Sup. Ct. July 30, 2003), and the

3

Appellate Division denied Connelly's motion for leave to appeal, (N.Y. App. Div. 2d Dep't Oct. 9, 2003).

His collateral attack thwarted, Connelly sought direct review of his conviction. He argued that the trial court erred when it (1) refused to adjourn trial to allow counsel to develop a psychiatric defense; (2) denied Connelly's request to include the lesser included offense of second degree manslaughter; (3) failed to give the jury an intoxication instruction; and (4) failed to give a "no duty to retreat" instruction. After oral argument, the Appellate Division requested post-argument briefing on a fifth issue, whether the conviction for depraved indifference murder was supported by sufficient evidence.

Ultimately, the Appellate Division affirmed the conviction finding (1) that Connelly failed to preserve the claim that Judge Marrus denied his right to present a defense; (2) that no reasonable view of the evidence would have supported a lesser included manslaughter charge without supporting the greater offense; (3) that Connelly waived his claim for failure to give an intoxication charge; (4) that the trial court's charge was otherwise proper; and (5) that Connelly both waived and failed to preserve his sufficiency of the evidence claim. *People v. Connelly*, 821 N.Y.S.2d 614 (App. Div. 2d Dep't 2006). On November 7, 2006, the New York Court of Appeals denied leave to appeal. *People v. Connelly*, 7 N.Y.3d 901 (2006).

## DISCUSSION

*AEDPA Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a habeas petition only where a state court's ruling on the merits was "contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court," or "was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court rules "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by th[e] Court on a question of law or . . . decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's ruling is "an unreasonable application" of clearly established Supreme Court precedent if it "applied [Supreme Court law] to the facts of [the] case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002). As long as "fairminded jurists could disagree" about whether a state court's denial of a claim on the merits was inconsistent with Supreme Court precedent, federal habeas relief must be denied. *Harrington*, 131 S.Ct. at 786 (internal quotation marks omitted). Stated differently, federal habeas relief is available only if the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court] law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786-87.

I. *Sufficiency of the Evidence*

Connelly first argues that the evidence adduced at trial was insufficient to convict him of depraved indifference murder under New York Penal Law § 125.25(2). Pet. at 31-46. The State argues that his claim is both procedurally defaulted and without merit. Resp. at 27-33.

A. *Procedural Default*

Ordinarily, "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris v. Reed*, 489 U.S. 255, 262 (1989). In finding Connelly's insufficiency claim unpreserved, the Appellate Division relied upon New York's contemporaneous objection rule, N.Y. Crim. P. Law § 470.05(2), *Connelly*, *supra*, which has long been considered such an "adequate and independent ground," *See Whitley v. Ercole*, 642

5

F.3d 278, 292 (2d Cir. 2011). New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error," *People v. Luperon*, 85 N.Y.2d 71, 78 (1995). Though defense counsel did object during the charge conference, his objection was not based on the sufficiency of the evidence.[1] Rather, counsel focused on the inconsistency of the prosecution's intentional and depraved indifference murder theories, maneuvering to have submitted to the jury the charges that best fit his defenses. Trial Tr. at 858-861. Accordingly, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule.

Connelly argues that this case falls within the narrow exception established by the Supreme Court's decision in *Lee v. Kemna*, 534 U.S. 362 (2002), and applied by the Second Circuit in *Cotto v. Herbert*, 331 F.3d 217, 247 (2d Cir. 2003). Reply at 3.[2] The exception recognizes that there are cases in which a state court's application of its own procedural rule is so "exorbitant" as to make it inadequate. *Lee*, 534 U.S. at 376. But here the Appellate Division's application of New York's contemporaneous objection rule was hardly exorbitant. In fact, it was perfectly routine. New York appellate courts have long insisted that a motion to dismiss for insufficient evidence be "specifically directed at the alleged error." *See People v. Carncross*, 14 N.Y.3d 319, 324-325 (2010); *People v. Finger*, 95 N.Y.2d 894, 895 (2000); *People v. Gray*, 86 N.Y.2d 10, 20-21 (1995); *Sanchez v. Lee*, No. 10-cv-7719, 2011 WL 924859, at *17 (S.D.N.Y. Mar. 16, 2011) (collecting cases). And Connelly's compliance would certainly have served a purpose;

---

[1] As noted above, defense counsel did move to dismiss both the intentional murder and the depraved indifference murder charges at the close of the prosecution's case. Trial Tr. at 655-56. His argument concentrated on the inconsistency of the two theories and the lack of any proof of intent. No argument was put forth as to why the evidence of depraved indifference was insufficient. Connelly does not claim that this motion preserved his insufficiency claim for review.

[2] Connelly's counsel moved on May 19, 2011 for leave to file a supplemental letter brief on the issue of procedural default, which the State opposed. This Court has reviewed the additional submission, but finds the arguments therein similarly without merit.

"[a]t a bare minimum, the trial court could have developed a factual record supporting its decision that could then properly be reviewed on appeal." *Whitley*, 642 F.3d 278, 290 (2d Cir. 2011). Lastly, this case presents none of the "unique circumstances" that made compliance difficult in *Lee* and *Cotto*. Accordingly, the exception does not apply.

Because his claim is barred by an adequate and independent procedural rule, Connelly must demonstrate either "cause for the procedural default and prejudice resulting therefrom," *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991), or "that he is actually innocent of the crime for which he has been convicted," *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). To establish cause, Connelly must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 479 (1986).

Connelly has advanced no cause for his procedural default. Nor can he establish actual innocence. For largely the same reasons stated *infra* Section I.B, which address the merits of Connelly's sufficiency claim, the evidence adduced at trial forecloses the conclusion that Connelly is factually innocent of depraved indifference murder.

Because Connelly failed to comply with New York's contemporaneous objection rule and cannot demonstrate cause for his noncompliance, his claim is procedurally defaulted.

*B. Merits*

Even if Connelly's claim were not procedurally defaulted, this Court would deny his claim on the merits. Since the Appellate Division did not reach the merits of this claim, this Court's review is *de novo*.

A petitioner "challenging the sufficiency of the evidence bears a very heavy burden." *Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d. Cir. 1997). If, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

7

essential elements of the crime beyond a reasonable doubt," a petitioner is not entitled to relief. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Moreover, where a Court is "faced with a record of historical facts that supports conflicting inferences [it] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

In conducting a sufficiency analysis, this Court must look to New York state law at the time Connelly's conviction became final in February of 2007. *See Rivera v. Cuomo (Rivera I)*, 649 F.3d 132, 140 (2d Cir. 2011) (since revisited on other grounds) (in determining the sufficiency of the evidence, the applicable law is the law as it existed on the date petitioner's conviction became final, *i.e.*, 90 days after the Court of Appeals denied leave to appeal); *Fama v. Comm'r of Corr. Servs*, 235 F.3d 804, 811 (2d Cir. 2000) ("When it considers the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'"). New York Penal Law § 125.25(2), the depraved indifference murder statute, provides that a person is guilty of second degree murder when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." In a series of cases culminating in *People v. Feingold*, 7 N.Y.3d 288 (2006), the New York Court of Appeals redefined the distinction between intentional and depraved indifference murder by overruling its prior understanding, set forth in *People v. Register*, 60 N.Y.2d 270, 276 (1983), that the *mens rea* for depraved indifference murder was simple recklessness and that the term "depraved indifference" referred merely to the objective circumstances of the crime. Instead, the Court of Appeals determined that depraved indifference to human life refers to a mental state that is more culpable than simple recklessness and that is both distinct from and incompatible with intentional

murder. *See Register*, 60 N.Y.2d 270 (1983); *People v. Sanchez*, 98 N.Y.2d 373 (2002), *People v. Hafeez*, 100 N.Y.2d 253 (2003); *People v. Gonzalez*, 1 N.Y.3d 464 (2004), *People v. Payne*, 3 N.Y.3d 266 (2004), *People v. Suarez*, 6 N.Y.3d 202, 212 (2005), and *Feingold*, 7 N.Y.3d at 294. The decisions in *Hafeez*, *Gonzalez*, *Payne*, and *Suarez* also stand for the proposition "that a defendant may be convicted of depraved indifference murder when but a single person is endangered in only a few rare circumstances." *Suarez*, 6 N.Y.3d at 212.

The only argument advanced by Connelly is that the evidence adduced at trial establishes that he acted intentionally, thus vitiating the finding of heightened recklessness implicit in his conviction for depraved indifference murder. Under the *Hafeez, Gonzalez, Payne, Suarez*, and *Feingold* line of cases, he argues, the only plausible view of the evidence is that he acted with intent.

Having reviewed the record, the Court cannot conclude that the evidence adduced at trial so clearly establishes Connelly's intent that *no* rational trier of fact could have found him guilty of depraved indifference murder. Rather, the Court concludes that the record contains ample evidence upon which a reasonable jury could conclude that Connelly did not intend to kill Gabucci and Russo, but rather acted with the depravedly indifferent state of mind defined in these cases. Connelly's violent outburst occurred early in the morning after a previously-amicable night of alcohol and drug use turned sour. Trial Tr. at 197; 407-08; 665-66; 739-40. The stabbings were committed with a kitchen knife that Connelly had grabbed from his kitchen moments before. Trial Tr. at 643, 645. According to the testimony of eyewitnesses Thomas Donovan and Melissa Ortiz, Gabucci was sitting next to Ortiz on the couch when Connelly ran up the stairs, lunged over the railing, and stabbed Gabucci once in the back, twice in the chest, and once in the shoulder. Trial Tr. at 206-07, 251-52 (testimony of Thomas Donovan); *id.* at 418-

19; 483-85 (testimony of Melissa Ortiz). He then pivoted and stabbed Russo. There is no suggestion in the record that Connelly attempted to isolate Gabucci or Russo. The inferences a reasonable juror could draw from these facts—that Connelly was seriously intoxicated, that the violence erupted spontaneously, that the stabbings were committed in a novice manner, and that the acts endangered others—are not consistent with intentional murder but support instead depraved indifference.

Connelly's own testimony at least in part supports the depraved indifference charge. Connelly testified that "he had no intention of killing" Gabucci and Russo. Trial Tr. at 815. He also testified that he did not believe he had killed either, but that instead of going after them, he ran away from his own house. *Id.* at 816. Subsequently, he testified that he called his neighbor, Marie Schnell, and requested that she "go down and check if everybody's all right." *Id.* at 817. As such, *Hafeez*, *Gonzalez*, *Payne*, and *Suarez*, which were principally directed at cases where "a defendant's conduct is specifically designed to cause the death of the victim," *Gonzalez*, 1 N.Y.3d at 467, are of little help to Connelly.

This conclusion is consistent with recent, factually similar cases in this Circuit addressing sufficiency-of-the-evidence challenges to depraved indifference murder by petitioners whose convictions became final *after* New York's depraved indifference law had changed.[3] *Garbutt v. Conway*, 668 F.3d 79 (2d Cir. 2012) (per curiam); *Parker v. Ercole*, 666 F.3d 830 (2d Cir. 2012). *Garbutt*—although decided under AEDPA's deferential standard of review—is particularly apposite. In *Garbutt*, the petitioner confronted a former girlfriend, who was with her daughter at

---

[3] The Court is aware of the Second Circuit's recent decision in *Gutierrez v. Smith*, 692 F.3d 256 (2d Cir. 2012). That opinion has subsequently been withdrawn, and so does not impact the Court's analysis. *See* Order Withdrawing Opinion, dated October 12, 2012, D.E. # 97, Court of Appeals Docket No. 10-4478. Other recent decisions in this Circuit denying challenges based upon sufficiency of the evidence were decided under the previous *Register* regime because of the date that these petitioners' convictions became final; therefore, they are inapposite. *See Epps v. Poole*, 687 F.3d 46, 52 (2d Cir. 2012); *Policano v. Herbert*, 507 F.3d 111, 114 (2d Cir. 2007).

10

the time, and initiated a physical altercation when she refused to talk to him. *Garbutt*, slip. op at 7. During the struggle "he pulled out [a] knife and began slashing." *Id.* The Court held:

> [A] reasonable jury could . . . have found that Garbutt had struck out in blind anger, without specifically intending to cause death, but with an awareness that his conduct could have deadly consequences for either Blanchard or Tolbert or both. The jury could further have inferred from the fact that Garbutt ran away before verifying that Blanchard had died that he had not intended to kill her. Moreover, a reasonable jury could also have found that Garbutt's violent and callous response to Blanchard's refusal to follow his orders, which endangered not only her but also Tolbert, manifested exactly the sort of depraved indifference to human life New York case law continues to treat as a mental state sufficient for a murder conviction. *Id.* at 7-8.

As in *Garbutt*, there is evidence in this record upon which a juror could conclude that Connelly "struck out in blind anger, without explicitly intending to cause death"; that "he ran away before verifying that [the victims] had died"; and that his actions were so "violent and callous [a] response" to his victims conduct as to constitute depraved indifference. *Cf. People v. Castellano*, 837 N.Y.S.2d 643, 644 (App. Div. 1st Dep't 2007) (finding that "wildly flailing a knife at multiple persons, without intending to kill or injure, is . . . akin to the classic depraved indifference situations" and noting that jury could have credited defendant's testimony that he did not intend harm despite People's intentional murder theory); *People v. Mannix*, 756 N.Y.S.2d 33, 34 (App. Div. 1st Dep't 2010) (finding evidence of depraved indifference murder sufficient where defendant, after being punched by the victim, fired through the door into a bathroom in which he knew victim and a third party were hiding); *see also Payne*, 3 N.Y.3d at 271 (distinguishing "homicides in which a defendant lacking the intent to kill (but oblivious to the consequences and with depraved indifference to human life) shoots into a crowd or otherwise endangers innocent bystanders").

Taking the evidence in the light most favorable to the prosecution, a reasonable juror could have convicted Connelly of depraved indifference murder. The claim is denied.

11

*II. Claims Related to Preclusion of Psychiatric Testimony*

Connelly advances two claims of error with respect to the preclusion of psychiatric evidence at trial. First, he claims that he was denied his due process right to present a complete defense[4] when the trial judge refused to grant an eleventh-hour adjournment to allow him to prepare a psychiatric defense. As he argued on direct appeal, Connelly claims that expert psychiatric testimony would have established his state of mind at the time of the stabbings, which, he contends, might have supported his justification defense. Pet. at 51, 55. Second, Connelly claims that his Sixth Amendment right to effective assistance of counsel was violated when his attorney failed to investigate and present psychiatric evidence.

Connelly's due process claim is procedurally barred, and both claims are without merit.

A. *Due Process Right to Present a Complete Defense*

1. Procedural Default

The Appellate Division once again relied on New York's contemporaneous objection rule in barring Connelly's due process claim. *Connelly*, 821 N.Y.S.2d at 615. Though Connelly's attorney did ask for an adjournment, he did not raise the constitutional error he asserts here. Connelly argues neither that the Appellate Division's application of the contemporaneous objection rule was "exorbitant" nor that cause and prejudice should excuse his default. This Court has reviewed the record and similarly finds no grounds to forgive his default. His claim is therefore barred. *Peterson v. Scully*, 896 F.2d 661, 663 (2d Cir. 1990) ("If a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his

---

[4] Although Connelly characterizes this as a "due process" right, Pet. at 47, the constitutional guarantee to a "meaningful opportunity to present a complete defense" may be grounded in either the due process clause of the Fourteenth Amendment or the compulsory process or confrontation clauses of the Sixth Amendment. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The Court uses Connelly's "due process" terminology for ease of reference.

12

failure to comply with [the] contemporaneous objection rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review.").

    2. Merits

Even if Connelly's claim were not barred, he would still not be entitled to relief. Although Connelly did not raise any claim of error by the trial court in his motion to vacate pursuant to N.Y. Crim. Pro. Law § 440.10, Judge Marrus's opinion nonetheless found that "the Court properly granted the People's motion to preclude psychiatric testimony." *Connelly*, No. 9473/94, at 4 (citing *People v. Berk*, 88 N.Y.2d 257 (1996)). Because the due process claim was not before the motion court, and because the Appellate Division did not review the claim on the merits, the Court applies a *de novo* standard. Even under this standard, however, the claim fails.

The Supreme Court held in *Crane v. Kentucky* that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." 476 U.S. 683, 690 (1986) (internal quotation marks omitted). Trial courts, however, enjoy "wide latitude," and federal courts must be "reluctan[t] to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Id.* at 689. In this Circuit, where an evidentiary ruling was correct pursuant to a state evidentiary rule, a federal habeas court may reverse only if that rule is "arbitrary or disproportionate to the purposes [it is] designed to serve." *United States v. Scheffer*, 523 U.S. 303, 330 (1998) (internal quotation marks omitted); *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006). A trial court's application of a state evidentiary rule will be deemed unconstitutionally "arbitrary" or "disproportionate" only if it has "infringed upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308; *Hawkins*, 460 F.3d at 244, 245.

The trial court in this case denied Connelly's request for an adjournment to develop and present psychiatric testimony pursuant to New York Criminal Procedure Law § 250.10. That rule

provides that "[p]sychiatric evidence is not admissible upon a trial unless the defendant serves . . . written notice of his intention to present psychiatric evidence . . . not more than thirty days after entry of the plea of not guilty to the indictment." N.Y. Crim. P. Law § 250.10(2). The rule also allows trial courts to permit later notice "in the interest of justice and for good cause shown . . . ." N.Y. Crim. P. Law § 250.10(2). Connelly did not provide notice of his intent to offer psychiatric evidence until the morning of jury selection. The essence of defense counsel's excuse was that "the psychologist has not been able to see him for reasons beyond my control." Voir Dire Tr. at 14. Defense counsel did not so much as venture a guess as to what the psychiatric examination or evidence might show. *Id.* Moreover, one of the prosecution's key witnesses, Thomas Donovan, was then serving in the Navy and would have been unavailable for months had the case been adjourned. *Id.* at 18-19. This Court therefore cannot say that the trial court's application of its rule was improper.

For much the same reason, the trial judge's application of § 250.10 did not violate due process. Quite simply, Connelly could not have a "weighty interest" in the presentation of a defense which, at the time the trial court denied the request for an adjournment, did not exist. As no psychiatric examination had yet been performed, the trial court had no notice whatsoever as to what the substance of such a defense might have been. *See Hawkins*, 460 F.3d at 246 (declining to find a violation of the petitioner's right to present a complete defense where the court did "not know the substance of the excluded evidence," and thus could not "appreciate [its] significance"). Courts in this Circuit have consistently rejected constitutional challenges to New York trial courts' exclusion of psychiatric testimony due to noncompliance with the notice requirements of § 250.10. *See Almonor v. Keane*, 27 F. App'x 10, 11-12 (2d Cir. 2001); *Singh v. Greene*, No. 10-cv-4444, 2011 WL 2009309, at *18 (E.D.N.Y. May 20, 2011); *Bien v. Smith*,

14

546 F. Supp. 2d 26, 45-46 (E.D.N.Y. 2008); *Rios v. Artuz*, No. 07-cv-330, 2007 WL 1958899 at *5-6 (E.D.N.Y. Jun. 29, 2007). Precluding unnoticed psychiatric testimony is a proportionate means of furthering the rule's twin ends, "allow[ing] the prosecution an opportunity to require relevant information . . . to counter the defense" and "avoid[ing] delay," *see Berk*, 88 N.Y.2d at 264-65. The claim is denied.

   B. *Alternative Ineffective Assistance of Counsel Claims*

Connelly argues in the alternative that the trial judge's preclusion of his psychiatric testimony was a direct result of his attorney's failure "to act diligently in the investigation of [his] case and in the gathering of such evidence." Pet. at 56. As he argued in his § 440.10 motion, Connelly contends that psychiatric evidence, particularly related to abusive acts he witnessed against his mother and sister, could have supported a defense of extreme emotional disturbance, which, he insists, would have supported submitting the intentional murder—and lesser-included first degree manslaughter—charge to the jury. Pet. Reply at 14-15, 18-19.[5] As

---

[5] Connelly also argues that trial counsel's failure to timely develop psychiatric evidence constituted ineffective assistance because it would have strengthened his justification defense under New York Penal Law § 35.15(2). Specifically, Connelly argues that psychiatric evidence would have supported the reasonableness of his belief that deadly force was necessary to protect himself and his mother from Gabucci and Russo. Pet. at 53-57. On direct appeal, Connelly made a similar argument to support his claim that the trial court violated his right to due process in denying his motion to adjourn to develop psychiatric evidence. No claim of ineffective assistance was brought on direct appeal. Connelly has never presented to a state court the claim that trial counsel was ineffective in failing to timely develop psychiatric evidence because this prejudiced his justification defense. Nonetheless, the Court concludes that this claim should be deemed exhausted and procedurally barred because Connelly no longer has state remedies available. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994). Although New York courts have discretion pursuant to Criminal Procedural Law § 440.10(3)(c) to grant a motion to vacate where the claim could have been raised in a previous § 440.10 motion but was not, this discretion is limited to circumstances where it is "in the interest of justice," there is "good cause shown," and the claim is "otherwise meritorious." As Connelly clearly cannot meet this standard, it would be futile for him to seek review in a second § 440.10 proceeding, and the Court deems the claim defaulted. Connelly shows neither cause nor prejudice for the default. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In any event, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in state court." 28 U.S.C. § 2254(b)(2). Reviewing the claim *de novo*, the Court would deny the claim on the merits for failing to meet the prejudice standard under *Strickland v. Washington*, 466 U.S. 668 (1984). A claim of self-defense fails where "the actor was the initial aggressor." N.Y. Penal Law § 35.15(1)(b). Even if the psychiatric evidence bore on the reasonableness of Connelly's belief as to the need for deadly force, failure to present it did not amount to prejudice because of the inherent weakness of the justification defense, as the overwhelming evidence showed that Connelly was the first aggressor. Because this evidence was itself sufficient to defeat Connelly's justification defense, the Court cannot

noted, *supra*, Judge Marrus's § 440.10 opinion rejected this claim on the merits.[6] *Connelly*, No. 9473/94, at 4-7. Thus, Connelly is entitled to relief only if that decision was an unreasonable application of clearly established Supreme Court precedent. "The standards [for ineffective assistance of counsel] and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 131 S.Ct. at 788 (internal quotation marks and citations omitted); *see also Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003) ("The heavy burden of showing ineffective assistance [is] enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under [AEDPA].").

The standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must show that (1) he was deprived of "reasonably effective assistance," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687, 694. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances," and "[t]here is a strong presumption that counsel's performance falls within the wide range of professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Even assuming that Connelly's attorney was objectively unreasonable for failing to investigate psychiatric evidence for use in an extreme emotional disturbance defense, Connelly cannot establish prejudice under *Strickland*'s second prong. First, as the motion court held, extreme emotional disturbance is not a defense to depraved indifference murder. *See People v.*

---

conclude that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

[6] The State argues that even though Judge Marrus reviewed this claim on the merits, New York law did not permit Connelly to raise it in a § 440.10 motion in the first place. They argue that the claim is therefore procedurally barred. The Court declines to apply New York's procedural law to bar a claim when the state court has itself declined to do so.

*Fardan*, 82 N.Y.2d 638, 645 (1993); *Lyons v. Conway*, 9:03-cv-503, 2006 WL 2847281, at *5 (N.D.N.Y. Sept. 30, 2006) (citing *Shields v. Duncan*, 2003 WL 22957008, at *16 (E.D.N.Y. Oct. 20, 2003) (decided after *People v. Hafeez*, 100 N.Y.2d 253 (2003))); New York Penal Law § 125.25 (listing extreme emotional disturbance as a defense to intentional murder but not depraved indifference murder). Second, even if Connelly mounted a credible defense of extreme emotional disturbance, it does not follow that the defense alone supports submitting a charge of intentional murder to the jury. Rather, the prosecution's evidence of intentional murder must itself be sufficient to support submitting the charge. As Judge Marrus aptly explained:

> The very essence of the defense of extreme emotional disturbance is to show a severe loss of self-control which, if believed by the trier of fact, would vitiate intent; not prove that it existed. Therefore, even if the defendant had raised the defense, a gap in the proof of Intentional Murder would still remain. The mere interposition of a defense does not compel the Court to submit specific charges to a jury when the requisite proof to substantiate them is lacking. *Connelly*, No. 9473/94, at 6 (internal quotation marks and citations omitted).

Because the motion court's decision was not an unreasonable application of clearly established Supreme Court precedent, the claim is denied.

### III. *Improper Jury Instruction*

Lastly, Connelly argues that his due process rights were violated when the trial judge declined to instruct the jury that a person has no duty to retreat in his own home. Pet. at 58. Specifically, Connelly argues that the Appellate Division's rejection of this claim was an "unreasonable application" of the rule established by the Supreme Court in *Cupp v. Naughten*, 414 U.S. 141, 146 (1973), which recognized that an improper jury instruction violates due process if it "so infected the entire trial that the resulting conviction violates due process." Pet. at 65. Connelly fails to make the requisite showing here.

Connelly's counsel did not raise the issue of a "no duty to retreat" instruction until after Judge Marrus had already given the jury its instructions. Trial Tr. at 987. In response to counsel's objection, Judge Marrus properly pointed out that there was no need to apprise the jury that Connelly had no duty to retreat *in his own home* because the court had determined not to give any instruction on the duty to retreat. *Id*. at 990-91. As the jury was not under the impression that Connelly was under a duty to retreat, there was no need to provide the counterbalancing charge that this duty did not apply within his home. *Id.*

On appeal the Appellate Division found that Judge Marrus's refusal to instruct on the home exception to the duty to retreat was proper, particularly because the "overwhelming evidence disproved the justification defense." *Connelly*, 821 N.Y.S.2d at 615. This was clearly not an unreasonable application of clearly established Supreme Court precedent. Even assuming that there was some defect in the charge for not presenting the home exception, this defect was not one that "so infected" the trial as to violate due process. Accordingly, the Appellate Division's denial of Connelly's claim was not an "unreasonable application of" *Cupp v. Naughten*, and Connelly's final claim is denied.

## CONCLUSION

For the above reasons, the petition is denied. Connelly has not made a substantial showing of the denial of a federal constitutional right, so no certificate of appealability shall issue. 28 U.S.C. § 2253(c). The clerk of court is directed to enter judgment accordingly and close the case.

SO ORDERED.

Dated: Brooklyn, N.Y.
      November 8, 2012

                                                        _____/s/_____
                                                        Carol Bagley Amon
                                                        Chief United States District Judge